# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

In re:

**CV SETTLEMENT HOLDINGS, LLC,**                    Case No. 14-03731-JCO
                                                                                        Chapter 11

Debtor.

_____/

**PORTSIDE REALTY, LLC, on behalf of
CV SETTLEMENT HOLDINGS, LLC,**

    **Plaintiff,**

                                      Adv. Pro. No.:

**v.**

**J. MARION UTER; PAUL M. UTER;
PETER F. BURNS; JAMES H.
MCDONALD; CYPRESS VILLAGE
DEVELOPMENT COMPANY, LLC;
BURNS, CUNNINGHAM & MACKEY,
P.C.; BRYANT BANK; BEATUS
INVESTMENTS, L.L.C.; CASH CANAL,
L.L.C.; and BLADE CONSTRUCTION,
LLC;**

    **Defendants.**

_____/

## <u>COMPLAINT</u>

For its Complaint against the Defendants, Plaintiff **PORTSIDE REALTY,**

**LLC** ("**Portside**"), on behalf of the Debtor and Debtor in Possession **CV**

**SETTLEMENT HOLDINGS, LLC** (the "**Debtor**"), states as follows:

## PARTIES

1.      Portside is a Florida limited liability company. It is a citizen of the State of Florida. Its principal place of business is in Ft. Lauderdale, Florida.

2.      The Debtor is an Alabama limited liability company. It is a citizen of the State of Alabama. Its principal place of business is in Baldwin County, Alabama.

3.      Defendant **CYPRESS VILLAGE DEVELOPMENT COMPANY, LLC** ("**Cypress Village Development**"), is an Alabama limited liability company. It is a citizen of the State of Alabama. Its principal place of business is in Baldwin County, Alabama.

4.      Defendant **J. MARION UTER** (the "**M. Uter**"), is a citizen of the State of Florida.

5.      Defendant **PAUL M. UTER** (the "**P. Uter**"), is a citizen of the State of Alabama.

6.      Defendant **PETER F. BURNS** (the "**Burns**"), is a citizen of the State of Alabama.

7.      Defendant **JAMES H. MCDONALD** (the "**McDonald**"), is a citizen of the State of Alabama.

8.     Defendant **BURNS, CUNNINGHAM & MACKEY, P.C.** ("**BCM**"), is an Alabama professional corporation. It is a citizen of the State of Alabama. Its principal place of business is in Mobile County, Alabama.

9.     Defendant **BRYANT BANK** (the "**Bank**"), is an Alabama banking corporation. It is a citizen of the State of Alabama. Its principal place of business is in Tuscaloosa County, Alabama. The Bank does business by agent in Baldwin County, Alabama.

10.    Defendant **BEATUS INVESTMENTS, L.L.C.** ("**Beatus**"), is an Alabama limited liability company. It is a citizen of the State of Alabama. Its principal place of business is in Baldwin County, Alabama.

11.    Defendant **CASH CANAL, L.L.C.** ("**Cash Canal**"), is a dissolved Alabama limited liability company. It is a citizen of the State of Alabama. Its principal place of business is in Baldwin County, Alabama.

12.    Defendant **BLADE CONSTRUCTION, L.L.C.** ("**Blade Construction**"), is an Alabama limited liability company. It is a citizen of the State of Alabama. Its principal place of business is in Baldwin County, Alabama.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

14.    Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

15.     This matter is a core proceeding pursuant to 28 U.S.C. § l57(b)(2)(A), (B), (E), (F), (H), (K), (M), (N), and (O).

## FACTS

### The Debtor and Its Relationships Among the Defendants

16.     Burns and McDonald organized the Debtor on June 7, 2013.

17.     M. Uter and P. Uter are the only two members of the Debtor.

18.     Burns and McDonald are the Debtor's only two managers.

19.     Burns and McDonald both represent or have represented not only M. Uter and P. Uter, but also the Uter Entities (as defined below).

20.     Currently, McDonald represents both M. Uter and P. Uter in the Debtor's Bankruptcy Case.

21.     Blade Construction is owned and operated by Colin D. Uter ("C. Uter"), who is Blade Construction's sole member.

22.     P. Uter and C. Uter are M. Uter's children.

23.     M. Uter, P. Uter, and C. Uter all are or were members of UCO Construction, L.L.C. ("**UCO Construction**").

24.     On or about August 30, 2013, C. Uter ceased to be a member of UCO Construction.

25.     However, M. Uter, P. Uter, C. Uter, Burns, and McDonald are all insiders of the Debtor.

4

## The CPT Litigation

26.     On or about January 23, 2008, the UCO Construction, M. Uter, P. Uter, and C. Uter (collectively, the "**Uter Entities**") filed suit against Colonial Properties Trust and several of its affiliates (collectively, "**CPT**") in that certain civil action styled *UCO Construction, LLC, et al., v. Colonial Properties Trust, et al.*, Circuit Court of Baldwin County, Alabama, Case No. CV-08-900079 (the "**CPT Litigation**").

27.     The CPT Litigation arose from one or more joint ventures among the Uter Entities and CPT related to Cypress Village, a planned unit development in Orange Beach, Alabama (the "**Development**").

28.     Alford, Clausen & McDonald, LLC ("**Alford Clausen**"), and BCM represented the Uter Entities in the CPT Litigation.

29.     Specifically, McDonald, on behalf of Alford Clausen, and Burns, on behalf of BCM, represented the Uter Entities during the CPT Litigation and through post-judgment litigation and settlement of the CPT Litigation.

30.     On or about December 16, 2011, the Uter Entities (or some combination of them) won a jury verdict against CPT in the amount of $5,252,000.00.

31.     During 2012, the parties to the CPT Litigation settled their claims and defenses and, through their counsel, entered into a Confidential Settlement Memorandum, dated as of December 6, 2012.

32.     Pursuant to the Confidential Settlement Memorandum, CPT agreed to convey to the Uter Entities a portion of the Development (the "**Settlement Property**").

## The Uter Entities' Indebtedness to Alford Clausen and BCM

33.     At the conclusion of the CPT Litigation, the Uter Entities owed substantial legal fees to Alford Clausen and to BCM.

34.     On information and belief, during the CPT Litigation, Bryant Bank made a loan to Alford Clausen.

35.     Alford Clausen pledged the attorney's fees it earned in the CPT Litigation as collateral for the Bryant Bank loan.

36.     The settlement in the CPT Litigation did not generate enough cash for Alford Clausen to pay its indebtedness to Bryant Bank.

37.     Bryant Bank threatened suit against the Settlement Property (presumably as property recovered in the CPT Litigation).

38.     To avoid litigation relating to Alford Clausen's indebtedness, the Debtor and Bryant Bank entered into an agreement pursuant to which the Debtor

6

effectively assumed (a) the Uter Entities' indebtedness to Alford Clausen, and (b) Alford Clausen's indebtedness to Bryant Bank.

39.     On or about October 8, 2013, the Debtor executed (or caused to be executed) that certain Promissory Note by the Debtor in favor of Bryant Bank in the original principal amount of $1,300,000.00. The amounts due under the Promissory Note bore interest at 12% per annum.

40.     Burns signed the Promissory Note as a manager of the Debtor.

41.     On information and belief, one or more of the Uter Entities guaranteed the Debtor's indebtedness under the Promissory Note.

42.     On October 8, 2013, the Debtor executed (or caused to be executed) that certain Real Estate Mortgage by the Debtor in favor of both Bryant Bank and BCM, apparently granting them a first priority security interest in and to its only assets – that is, Settlement Property.

43.     The Real Estate Mortgage was recorded in the Office of the Judge of Probate of Baldwin County, Alabama, on October 9, 2013, as instrument No. 1423987.

44.     The Real Estate Mortgage provided that "the respective rights of Bryant Bank and Burns, Cunningham & Mackey, P.C., as between said note holders are set forth in an agreement of even date herewith."

45.     Burns signed the Real Estate Mortgage as the manager of the Debtor.

46.     On or about December 19, 2013, the Debtor, Bryant Bank, and BCM entered into that certain Amendment to Real Estate Mortgage recorded in the Office of the Judge of Probate of Baldwin County, Alabama, on December 20, 2013, as instrument No. 1434574.

47.     The Amendment to Real Estate Mortgage revised the legal description of the collateral identified and described in the October 8, 2013, Real Estate Mortgage.

48.     McDonald executed the Amendment to Real Estate Mortgage as the Manager of the Debtor.

49.     Burns executed the Amendment to Real Estate Mortgage as the President of BCM.

## The Blade Construction Payments

50.     On or about August 6, 2013, the Debtor executed (or caused to be executed) that certain Promissory Note by UCO Construction and the Debtor in favor of Blade Construction in the original principal amount of $136,232.01. The Promissory Note was recorded in the Office of the Judge of Probate of Baldwin County, Alabama on August 9, 2013, as Instrument No. 1413965.

51.     The Promissory Note bore interest at 1.5% per annum. It was secured by "real & personal property possessed by CV Settlement Holdings, LLC & it's members personally, and UCO Construction, LLC & it's members personally."

52. M. Uter signed the Promissory Note in favor of Blade Construction on behalf of the Debtor.

53. On information and belief, as with the Debtor's other indebtedness, M. Uter and P. Uter guaranteed the Debtor's indebtedness to Blade Construction.

54. At the time the Debtor executed the Blade Construction Promissory Note, C. Uter was a member of both UCO Construction and Blade Construction.

55. At the time the Debtor executed the Blade Construction Promissory Note, C. Uter was a relative of both M. Uter and P. Uter, both of whom were, apparently, in control of the Debtor of at the time.

56. On or about December 27, 2013, Blade Construction executed (or caused to be executed) that certain Notice of Payment in Full of Promissory Note. The Notice of Payment in Full of Promissory Note was recorded in the Office of the Judge of Probate on December 31, 2013, as Instrument No. 1435767.

### The Cash Canal Litigation and Release

57. Cash Canal was formed on or about March 4, 2005. Its original members were John D. Smith, John G. Crews, J. Ralph Overton, and W. Allen Cox, Jr.

58. On information and belief, Cash Canal was a creditor of one or more of the Uter Entities prior to the CPT Litigation and prior to the Debtor's bankruptcy case.

9

59. On or about November 16, 2007, Cash Canal filed suit against M. Uter, Cypress Village Development, and CPT, among others, in that certain civil action styled *Cash Canal, L.L.C. v. J. Marion Uter, et al.*, Circuit Court of Baldwin County, Alabama, Case No. CV-2007-824 (the "**Cash Canal Litigation**").

60. On or about May 15, 2012, Cash Canal obtained a judgment against M. Uter and Cypress Village Development in the amount of $425,000.00.

61. Approximately one year later, on June 24, 2013, Cash Canal executed that certain Release of Judgment pursuant to which Cash Canal released its judgments against M. Uter and Cypress Village Development. Cash Canal also released CPT from any liability with respect to its May 15, 2012, judgment against M. Uter and Cypress Village Development.

62. According to Cash Canal's June 24, 2013, Release of Judgment, Cash Canal affirmed that its judgment against M. Uter and Cypress Village Development "[had] been fully paid and satisfied" and cancelled and discharged.

## The Bankruptcy Case

63. On November 13, 2014, (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Alabama (the "**Bankruptcy Court**"). (Doc. 1)

64. M. Uter's electronic signature appears on the face of the Petition. *Id.*

65.     At the time the Debtor filed its Petition, the Debtor was insolvent.

66.     On December 8, 2012, the Debtor filed its List of Creditors Holding 20 Largest Unsecured Claims and its remaining, unfiled schedules, and its Statement of Financial Affairs ("**SOFA**"). (Doc. 13)

67.     P. Uter's electronic signature appears on the face of the Debtor's schedules and SOFA. *Id*.

68.     According to the Debtor's Summary of Schedules, the total value of the Debtor's assets was $2,555,000.00, and its liabilities were $3,331,881.89. (Doc. 13)

69.     The Debtor's schedules showed no personal property, tangible or intangible, and the schedules reflected real property worth only $2,555,000.00. *Id*.

70.     In its SOFA, the Debtor affirmatively represented that it had made no payments to any insiders of the Debtor within one year immediately preceding commencement of the Debtor's Bankruptcy Case. (Doc. 13 at 18)

71.     In its SOFA, the Debtor affirmatively represented that its only transfers of property absolutely or as security within two years preceding the Petition Date were to Baldwin Acquisitions, LLC, En Cypress, LLC, and Canal Road Homes, LLC. *Id*. at 19.

72.     The Debtor never made any reference to its indebtedness or payment to Blade Construction, even though it made payments to Blade Construction, an insider, within the two year period preceding the Petition Date.

73.     On January 14, 2015, the Debtor filed a Motion to Determine Secured Status of Claims and Validity of Liens, seeking a valuation of the Debtor's property and a determination with respect to the alleged liens of Bryant Bank, BCM, and Portside. (Doc. 24)

74.     On March 31, 2015, the Bankruptcy Court conducted a hearing and determined that the Debtor's Motion to Determine Secured Status of Claims and Validity of Liens was moot. (Doc. 93, Minute Entry)

75.     On April 9, 2015, BCM filed its Proof of Claim in the Bankruptcy Case. BCM did not attach a copy of the Promissory Note referenced in the Real Estate Mortgage.

76.     On April 28, 2015, Bryant Bank filed its Proof of Claim in the Bankruptcy Case.

77.     On July 20, 2015, Bryant Bank assigned its Promissory Note and the Real Estate Mortgage to Beatus.

78.     On September 16, 2015, the Debtor filed its objection to Claim (Doc. 175), in which it objected to BCM's Proof of Claim on two grounds: (a) the Debtor disagreed with the balance due and calculation of interest allegedly owed to BCM,

and (b) the Debtor contended that "the debt owed was placed on the Debtor without consent of members as to form and content." (Doc. 175)

79.    Then, on September 22, 2015, the Debtor filed its Third Amended Disclosure Statement as Supplemented and its Second Amended Plan of Reorganization as Supplemented. (Docs. 185, 186)

80.    In its Third Amended Disclosure Statement as Supplemented (Doc. 185), the Debtor alleged that its disputed the interest rates charged by Beatus (as successor to Bryant Bank) and BCM. The Debtor also disclosed that it if the Bankruptcy Court determined that the interest rates charged complied with applicable bankruptcy law that it intended to pay Beatus and BCM in full over the life of the Plan.

81.    In its Second Amended Plan of Reorganization as Supplemented, the Debtor asserted that it is "contesting the validity of the mortgage securing claim and Debtor will only pay this claim . . . if the Court determines the mortgage is valid and enforceable." (Doc. 186 at 7)

82.    On October 20, 2016, both BCM and Beatus (as successor to Bryant Bank) filed Limited Objections to Confirmation. (Docs. 197, 200) BCM's and Beatus's Limited Objections to Confirmation were virtually identical, and both Limited Objections to Confirmation provided that "Counsel for Debtor and [BCM or Beatus] have reached an oral agreement regarding the treatment [of their

Case 16-00064    Doc 1    Filed 11/14/16    Entered 11/15/16 00:02:26    Desc Main
Document    Page 13 of 25

respective claims]. To the extent necessary, the amount and treatment of [their] secured claim[s] will be amended."

83.     None of the Debtor, Beatus, or BCM amended the creditors' proposed treatment under the Second Amended Plan of Reorganization as Supplemented or their Proofs of Claim in the Bankruptcy Case.

84.     The Debtor, however, withdrew without explanation its Objection to Claim (Doc. 175) with respect to BCM's Proof of Claim.

### Unauthorized Post-Petition Transfer to Cash Canal

85.     On June 24, 2015, the Bankruptcy Court entered an Order Approving Sale of Property Free and Clear of Liens, Interests and Encumbrances Pursuant to Bankruptcy Code Section 363(f) (the "**June 24, 2015, Sale Order**"). (Doc. 135)

86.     Pursuant to the June 24, 2015, Sale Order, the Bankruptcy Court authorized to the Debtor to sell to Truland Homes, LLC, 18 lots in the Development. The Purchase Price for such sale was $675,000.00.

87.     The June 24, 2015, Sale Order provided that

All net sale proceeds, after payment of all necessary and reasonable expenses of sale, payment of the Chapter 11 quarterly fee, and the administrative carve out for professional fees incurred by Debtor's counsel in the case, shall be disbursed to Bryant Bank and Burns, Cunningham & Mackey, P.C. to be credited by Bryant Bank and Burns, Cunningham & Mackey, P.C., against their first mortgage lien.

Doc. 135, ¶ 12 at 4.

88.     On July 14, 2015, the Debtor executed (or caused to be executed) a Warranty Deed conveying to Truland Homes 18 lots in the Development.

89.     Burns signed the Warranty Deed, and McDonald notarized the Warranty Deed. Burns also signed the HUD-1 Settlement Statement memorializing the transaction between the Debtor and Truland Homes.

90.     On July 14, 2015, Bryant Bank received $320,424.58 in net sale proceeds from the sale to Truland Homes.

91.     On July 14, 2015, BCM received $270,424.58 in net sale proceeds from the sale to Truland Homes.

92.     On July 14, 2015, Cash Canal received $50,000.00 from the proceeds of the sale to Truland Homes.

93.     Cash Canal was not a creditor of the Debtor, and Cash Canal had no claims in the Debtor's Bankruptcy Case.

94.     The payment to Cash Canal was never authorized by the Bankruptcy Court.

95.     On December 22, 2015, Cash Canal dissolved.

## Derivative Claims

96.     This is a derivative action. The claims asserted by Portside in this Complaint are made on behalf of the Debtor and its estate.

97.     This action is filed with two years after the Petition Date and is timely

pursuant to Sections 108(a) and 546(a) of the Bankruptcy Code.[1]

98.     All conditions precedent to the filing of this action have occurred or

have been waived.[2]

## COUNT I

## Avoidance Action Pursuant to 11 U.S.C. § 548(a) (Constructive Fraud)

99.     Portside incorporates by reference and re-alleges the allegations

contained in paragraphs 1 through 98 of this Complaint.

100.    This is an adversary proceeding to avoid certain transfers and recover

property of the Estate pursuant to Fed. R. Bankr. P. 7001(1).

101.    Cypress Village Development, M. Uter, P. Uter, Burns, McDonald,

BCM, and Bryant Bank imposed on the Debtor indebtedness it did not otherwise

owe.

102.    The Promissory Note or notes in favor of Beatus (as successor to

Bryant Bank) and BCM were obligations incurred by the Debtor for the benefit of

insiders.

---

[1] Portside has filed or will file a motion to extend the limitations period under
Section 546(a) of the Bankruptcy Code. Nevertheless, this action is timely.
[2] Portside has filed or will file a motion for derivative standing under Section 1109(a)
of the Bankruptcy Code.

16

103. The Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were transfers of interests in property of the Debtor.

104. The Debtor received less than reasonably equivalent value in exchange for the obligations and transfers to or in favor of Beatus (as successor to Bryant Bank) and BCM.

105. The Debtor was insolvent on the date Promissory Note or notes were executed and when the Real Estate Mortgage and the Amendment to Real Estate Mortgage were executed and delivered.

106. The Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were obligations incurred by the Debtor for the benefit of insiders, namely Cypress Village Development, M. Uter, P. Uter, Burns, McDonald, BCM, Alford Clausen, and Bryant Bank.

107. At all relevant times, the Debtor (and its insiders) intended for the Debtor to incur debts that would be beyond its ability to pay as such debts matured.

108. The Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were fraudulent transfers avoidable under Section 548(a)(1)(B) of the Bankruptcy Code.

WHEREFORE, Portside demands a judgment (a) avoiding the Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM, and (b) awarding such other, further, or different relief as is just and proper.

## COUNT II

### Violation of Alabama Uniform Fraudulent Transfer Act, Ala. Code ¶ 8-9A-101, *et seq*. (the "UFTA") (Constructive Fraud)

109.   Portside incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98 of this Complaint.

110.   This is an adversary proceeding to avoid certain transfers and recover property of the Estate under the UFTA.

111.   Cypress Village Development, M. Uter, P. Uter, Burns, McDonald, BCM, and Bryant Bank imposed on the Debtor indebtedness it did not otherwise owe.

112.   The Promissory Note or notes in favor of Beatus (as successor to Bryant Bank) and BCM were obligations incurred by the Debtor for the benefit of insiders.

113.   The Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were transfers of interests in property of the Debtor.

114.    The Debtor received less than reasonably equivalent value in exchange for the obligations and transfers to or in favor of Beatus (as successor to Bryant Bank) and BCM.

115.    The Debtor was insolvent on the date Promissory Note or notes were executed and when the Real Estate Mortgage and the Amendment to Real Estate Mortgage were executed and delivered.

116.    The Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were obligations incurred by the Debtor for the benefit of insiders, namely Cypress Village Development, M. Uter, P. Uter, Burns, McDonald, BCM, Alford Clausen, and Bryant Bank.

117.    At all relevant times, the Debtor (and its insiders) intended for the Debtor to incur debts that would be beyond its ability to pay as such debts matured.

118.    The Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM were fraudulent transfers avoidable under UFTA.

WHEREFORE, Portside demands a judgment (a) avoiding the Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM, and (b) awarding such other, further, or different relief as is just and proper.

## COUNT III

### Avoidance Action Pursuant to Section 549(a) of the Bankruptcy Code

119.   Portside incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98 of this Complaint.

120.   The July 14, 2015, payment to Cash Canal occurred after the Petition Date.

121.   The July 14, 2015, payment to Cash Canal was not authorized under the Bankruptcy Code or by the Bankruptcy Court.

WHEREFORE, Portside demands judgment against Cash Canal (a) ordering Cash Canal to turn over the July 14, 2015, payment; (b) awarding the Debtor pre-judgment and post-judgment interest; (c) awarding attorney's fees and expenses to Portside; and (d) granting such other, further, or different relief to which Portside, on behalf of the Debtor, may be entitled.

## COUNT IV

### Turnover of Property of the Estate Pursuant to Section 542 of the Bankruptcy Code

122.   Portside incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98 of this Complaint.

123.   Cash Canal holds funds belonging to the Debtor's estate, in an amount of at least $50,000.00, without right, title, or interest.

Case 16-00064   Doc 1   Filed 11/14/16   Entered 11/15/16 00:02:26   Desc Main
Document   Page 20 of 25

124.   The July 14, 2015, payment to Cash Canal constitutes property of the Estate as defined by Section 541 of the Bankruptcy Code.

125.   Cash Canal's failure to turn over the July 14, 2015, payment violates Section 542(a) of the Bankruptcy Code.

WHEREFORE, Portside, on behalf of the Debtor, demands judgment against Cash Canal (a) ordering Cash Canal to turn over the July 14, 2015, payment; (b) awarding the Debtor pre-judgment and post-judgment interest; (c) awarding attorney's fees and expenses to Portside; and (d) granting such other, further, or different relief to which Portside, on behalf of the Debtor, may be entitled.

## COUNT V

## Breach of Fiduciary Duty

126.   Portside incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98 of this Complaint.

127.   The Members and the Managers owe fiduciary duties to the Debtor's Estate.

128.   The Members and the Managers have violated their fiduciary duties to the Debtor's Estate by, among other things, asserting their own interests ahead of the Debtor's, not acting in the best interest of the Debtor or its estate, and/or by failing to take action that otherwise would be in the best interest of the Debtor, the Debtor's estate, and the creditors in this case.

WHEREFORE, Portside demands a money judgment against M. Uter, P. Uter, Burns, and McDonald and such other, further, or different relief to which Portside, on behalf of the Debtor, may be entitled.

## COUNT VI

129.   Portside incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98 of this Complaint.

130.   Plaintiff has asserted claims to avoid the transfers outlined in this Complaint, including, without limitation, the Promissory Note or notes and the Real Estate Mortgage and the Amendment to Real Estate Mortgage in favor of Beatus (as successor to Bryant Bank) and BCM for the benefit of the Debtor's estate.

131.   In the event the Court avoids one or more of the transfers referenced in this Complaint for the benefit of the Debtor's estate, Portside is also entitled to recover such transfer(s) or the value thereof for the benefit of the Debtor's estate pursuant to Section 550 of the Bankruptcy Code.

**WHEREFORE**, Portside demands judgment providing for the recovery of any avoided transfers or the value thereof for the benefit of the Debtor's estate together with pre-judgment interest, taxable costs, and such other, further, or different relief to which Portside, on behalf of the Debtor, may be entitled.

Dated:  November 14, 2016          Respectfully submitted,

*/s/ Jason Michael Osborn*
Jason Michael Osborn (ASB4122A58O)
OSBORN GROUP, LLC
308 Magnolia Avenue, Suite 102
Fairhope, Alabama 36532
Telephone:  (251) 929-5050
Email:  josborn@osborngroupllc.com

**COUNSEL FOR PORTSIDE
REALTY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on November 14, 2016, via electronic transmission through the Court's CM/ECF system upon all parties on the Court's CM/ECF Service List and via first class mail on upon all parties on the attached Mailing Matrix, to the extent that such parties were not served electronically through the Court's CM/ECF system.

Dated: November 14, 2016

*/s/ Jason Michael Osborn*
Jason Michael Osborn (ASB4122A58O)
OSBORN GROUP, LLC
308 Magnolia Avenue, Suite 102
Fairhope, Alabama 36532
Telephone: (251) 929-5050
Email: josborn@osborngroupllc.com

**COUNSEL FOR PORTSIDE REALTY, LLC**

24

## <u>SERVICE LIST</u>

MARK ZIMLICH
United States Bankruptcy Administrator

MR. MARION E. WYNNE, JR.
Wilkins, Bankester, Biles & Wynne, P.A.
P.O. Box 1367
Fairhope, Alabama 36533
Attorney for Debtor